UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID C. JONES )
Petitioner, )
)
v. ) Civil Action No. 04-121870-GAO
)
MICHAEL A. THOMPSON )
Respondent. )

## MEMORANDUM OF THE RESPONDENT
## IN SUPPORT OF MOTION TO DISMISS [1]

The petitioner, David C. Jones, seeks federal habeas corpus relief on the ground that he was denied his federally secured constitutional rights during his trial and prosecution. (Petition, p. 5, ¶ 12A-12D). He cites the following grounds:

(1) conviction obtained by the unconstitutional failure of the prosecution to disclose to the petitioner evidence favorable to him;

(2) conviction obtained by the use of falsified and tampered evidence (fingerprint);

(3) conviction obtained by the prosecution knowingly withholding evidence favorable to the petitioner; and

(4) conviction obtained by a violation of due process rights, prosecutorial misconduct. (Petition, pp. 5-6, ¶¶ 12A-12D.)

It is apparent from the record that Ground One is the only claim that was fairly presented to the Massachusetts Appeals Court and Supreme Judicial Court and it was deemed procedurally defaulted. (See. Exh. 4 at 3-4; Exh. 7 at R. 18-19). Thus, Ground One is not cognizable on federal habeas corpus review. *Coleman v. Thompson*, 501 U.S.

---

[1] The respondent is appending documents from the petitioner's post-conviction actions, i.e., his direct appeal, the G.L. c. 211, § 3 petition and the renewed motion for new trial, as exhibits and will cite these exhibits by number and page as (Exh. 1 at 1).

3

722, 729 (1991). The record also reveals that the petitioner has never presented Grounds Two through Four to the state's highest court, (see Exh. 5 at 11), and the entire petition should be dismissed.

## PRIOR PROCEEDINGS

The petitioner was convicted of breaking and entering in the daytime and larceny and sentenced as an habitual offender to ten years imprisonment at MCI Cedar Junction. (Petition, p. 2, ¶¶ 2-4;Exh. 1 at 2-3). His conviction was affirmed by the Massachusetts Appeals Court on May 31, 2000. *Commonwealth v. Jones*, 49 Mass. App. Ct. 1110, 728 N.E. 2d 972 (2000)(Exh. 4). The petitioner's application for further appellate review was denied by the Supreme Judicial Court on July 21, 2000. *Commonwealth v. Jones*, 432 Mass. 1105, 733 N.E. 2d 1066 (2000)(Exh. 5).

On October 20, 2000, the petitioner filed a renewed motion for a new trial and motion to withdraw his guilty plea. (Exh. 7A at R. 7). On December 20, 2000, Attorney Chrystal Murray filed a notice of appearance. (Exh. 7A at R. 8). On December 12, 2002, the petitioner, through counsel, filed a Motion to Produce Certain Documentary Evidence, and, on January, 13, 2003, the Commonwealth filed its opposition. (Exh. 7A at R. 8 ). On January 27, 2003, the court allowed the petitioner's discovery motion. ((Exh. 7A at R. 8). On February 19, 2003, the Commonwealth moved for reconsideration. ((Exh. 7A at R. 8). The court allowed the Commonwealth's motion for reconsideration but declined to alter its decision. (Exh. 7A at R. 8). (The judge did not issue a memorandum or make any findings supporting her allowance of the petitioner's discovery motion.) (Exh. 7A at R. 8)).

4

On March 19, 2003, the Commonwealth filed a petition pursuant to G. L. c. 211, § 3, in the Supreme Judicial Court for Suffolk County, seeking relief from Judge Butler's order. (Exh. 6). A hearing before the Single Justice, Cowin, J., was held on May 14, 2003. (Exh. 6). On June 12, 2003, the Single Justice allowed the Commonwealth's petition and vacated the order of the Superior Court granting the petitioner's post-conviction discovery motion. (Exh. 6)

On June 27, 2003, the petitioner filed an appeal before the full bench of the Supreme Judicial Court. (Exh. 6). Oral argument was held on April 5, 2004, and on April 28, 2004, the SJC issued an opinion affirming the judgment of the Single Justice. *Commonwealth v. Jones*, 441 Mass. 1015 (2004)(Exh. 6).

While the G.L. c. 211, § 3 appeal was pending in the SJC, the petitioner filed several motions in superior court on March 16, 2004, including a motion to amend the renewed motion for a new trial based on newly discovered evidence. (Exh. 9). On June 15, 2004, the petitioner's counsel's motion to withdraw was allowed and the petitioner was thereafter acting pro se. (Exh. 1). On June 24, 2004, the Commonwealth filed its opposition to the petitioner's Amended Motion for a New Trial. (Exh. 10). On July 1, 2004, the superior court, Dortch-Okara, J., denied the motion for new trial. (Exh. 11) On August 24, 2004, the petitioner moved to late file a notice of appeal from the order on the Defendant's Amended Motion for a New Trial. (Exh. 1) On October 4, 2004, the court denied the motion to late file the appeal. (Exh. 1).

The instant petition for writ of habeas corpus was filed on October 18, 2004.

5

## STATEMENT OF FACTS [2]

The Massachusetts Appeals Court described the underlying facts of the crimes for which the petitioner was convicted as follows:

> Gregory Holmes lived at 351 Clinton Road in Brookline with his wife Colleen and their two sons. On the morning of June 26, 1996, while Gregory was at work, Colleen and the boys left for a vacation. Colleen had locked the house doors and cellar door before leaving. Gregory returned home at 7:00 P.M. and soon noticed the place had been ransacked and various belongings removed. The police, promptly summoned, concluded after inspection that an intruder had entered through the kitchen window, now wide open with the screen bent.
>
> For purposes of the present case, attention centers on three boxes in the master bedroom that had been emptied and the contents taken. One, a long box, had contained a Japanese fan; a second had held some silver spoons. The third box, which had been in Colleen's possession for about ten years, and had lain in a top drawer of her dresser, had contained an unused leather wallet.
>
> Brookline Detective Barry McNeilly, after some unfruitful attempts at taking fingerprints in areas around the house, brought the three boxes to the police station for fingerprint work by sophisticated means. Detective John Dirrane was unable to secure latent prints from the first two boxes because of the porous quality of the boxes; the third box, nonporous, yielded to a "super glue fuming" procedure and uncovered latent prints -- three on the lid and two on the base of the box. Dirrane lifted off the latent prints on the lid of the box by means of a sheet of gelatin; the prints on the base could be photographed. One of the prints from the base was prepared for and submitted to "AFIS" (Automatic Fingerprint Identification System of the State Police). Comparison by computer method of this print with the [petitioner's] known print produced positive identification. So also did comparison by Dirrane and also by State Police Lieutenant Brian O'Hara of

---

[2] The Massachusetts Appeals Court's recitation of the facts of the petitioner's crimes is entitled to the presumption of correctness under 28 U.S.C. § 2254(e)(1). *See Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir. 2002); *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir. 2001); *Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000); *cf. Sumner v. Mata*, 449 U.S. 539, 545-46 (1981) (holding that presumption of correctness under former habeas statute applied to "factual determinations made by state courts, whether the court be a trial court or an appellate court").

6

the five latent prints with a known [petitioner's] print. Lieutenant O'Hara stated that the prints were so placed on the box as to conform to the way the box would be opened by hand.

For the defense, the owner of a Worcester salon testified that the [petitioner] had rented a barber chair from her in March, 1996, and did an independent business there. The [petitioner], said this witness, had worked in the salon on June 26, 1996. She guessed he might have worked as many as four hours, but could not say just when. From the Worcester salon to Clinton Road the drive would take about one hour.

*Commonwealth v. Jones*, 49 Mass. App. Ct. 1110, 728 N.E. 2d 972 (2000)(Exh. 4 at 1-3).

## ARGUMENT

### I. GROUND ONE IS PROCEDURALLY DEFAULTED

In his direct appeal in the Massachusetts Appeals Court and in his Application for Leave to Obtain Further Appellate Review (ALOFAR) in the Supreme Judicial Court, the petitioner raised two claims: (1) whether a required finding of not guilty should have entered where these was insufficient evidence introduced to identify the petitioner as the perpetrator of the crime; (2) whether the petitioner was denied due process and a fair trial where the Commonwealth failed to disclose material exculpatory evidence despite repeated and specific requests to do so and where the police destroyed the evidence prior to defense counsel having the opportunity to review it. (Exh. 5 at 11 et seq.)

Relative to the sufficiency of the evidence claim, the Massachusetts Appeals Court held that the petitioner's motion for a required finding was properly denied, citing *Commonwealth v. Latimore*, 378 Mass. 671, 677 (1979).[3] In responding to the claim, the

---

[3] In *Latimore*, 378 Mass. at 678, the SJC held that Massachusetts' directed verdict standard was substantially comparable to the federal constitutional standard of *Jackson v. Virginia*, 443 U.S. 307 (1979)(critical inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found evidence

7

Appeals Court stated:

> The [petitioner] does not appear to dispute, and there is much evidence, that the [petitioner's] prints were on the box, but the [petitioner contends] there was insufficient evidence the prints were placed on the box during the housebreak. We think that the jury could readily find otherwise. (Detailed demonstration of this proposition appears in the Commonwealth's brief at pp. 10-26.

*Commonwealth v. Jones*, 49 Mass. App. Ct. at 1110. (Exh. 4).

Relative to the *Brady v. Maryland*, 373 U.S. 83, 87 (1963) claim, the Appeals Court termed the petitioner's argument that the prosecution failed to disclose a list of persons with potentially matching prints as "new and different" from the argument raised at trial. (Exh. 4 at 4). It concluded that the information "could hardly have proved significant so as to put into question the fingerprint and other evidence received in the case." *Id.* The petitioner echoes this *Brady* claim in Ground One of his habeas petition, arguing again that his conviction was obtained by the failure of the prosecution to disclose to the petitioner evidence favorable to him. (Petition, p. 5, ¶ 12A). He alleges in support that, in 1996, he was deprived of potentially exculpatory information regarding a AFIS-Generated list of candidates produced and destroyed by the government during the prosecution of his case. He also contends that the prosecution claimed it could not guarantee that the identical candidate list could be regenerated and that releasing the list violates policy. (Petition, p. 5, ¶ 12A:Supporting Facts). This claim was raised in the petitioner's direct appeal but the Massachusetts Appeals Court deemed it procedurally defaulted and reviewed the claim to determine whether there was a substantial risk of a miscarriage of

---

sufficient to prove the essential elements of the crime beyond a reasonable doubt.

8

justice. (Exh. 4 at 4; Exh. 7 at 1-2). As the Single Justice stated in her decision on the petitioner's discovery motion, the argument that the petitioner had been prejudiced by the Commonwealth's failure to preserve a candidate list generated by the State Police Automated Fingerprint Identification System (AFIS) had been deemed waived by the Appeals Court which then reviewed the claim on a substantial risk of a miscarriage justice standard. (Exh. 7 at 1-2). This determination by the Appeals Court constituted an "adequate and independent state law ground" within the meaning of the procedural default rule, thereby precluding habeas review. *See Brewer v. Marshall*, 119 F.3d 993, 999 (1st Cir. 1997), *cert. denied*, 522 U.S. 1151 (1998).

The "procedural default rule" reflects the Supreme Court's view that, in the interests of comity and federalism, a habeas court "should not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Boutwell v. Bissonnette*, 66 F. Supp.2d 243, 245 (D. Mass. 1999), *quoting Coleman v. Thomspon*, 501 U.S. 722, 729 (1991). Such independent and adequate state grounds exist where, as here, the state court declined to address the merits of the underlying claim because the petitioner failed to meet a state procedural requirement. *See Simpson v. Matesanz*, 175 F.3d 200, 206 (1st Cir. 1999), *cert. denied*, 528 U.S. 1082 (2000).

Massachusetts has a long-standing rule that issues not properly raised at trial are treated as waived. *See Commonwealth v. Curtis*, 417 Mass. 619, 632 N.E.2d 821, 827 (1994). The United States Court of Appeals for the First Circuit has recognized that Massachusetts has a routinely enforced, consistently applied contemporaneous objection rule," which

9

requires a party to object properly to a perceived trial error at the time the error occurs to preserve the issue for appellate review. *Burks v. Dubois*, 55 F.3d 712, 716 (1st Cir. 1995) (collecting cases); *see also Brewer*, 119 F.3d at 1001 (describing Massachusetts' contemporaneous objection rule as "firmly entrenched"). Where, as here, a party has raised a new and different argument on appeal, appellate review under Massachusetts law is limited to determining whether the alleged error posed a likelihood of a miscarriage of justice. *See Burks*, 55 F.3d at 716, n. 2. The limited review undertaken pursuant to the Massachusetts "miscarriage of justice" standard does not operate as a waiver of the underlying procedural default. *Burks*, 55 F.3d at 716, n. 2. To the contrary, such review constitutes the "classic example of an independent and adequate state ground" supporting application of the procedural default rule. *Simpson*, 175 F.3d at 207. Habeas review, therefore, is precluded Ground One unless the petitioner "can demonstrate cause for default and prejudice stemming therefrom, or, alternatively, unless [he] can show that a refusal to consider the merits of the constitutional claim will work a miscarriage of justice." *Burks*, 55 F.3d at 716. No such showing can be made here.

"To excuse a procedural default, a petitioner's cause must relate to an objective factor, external to the defense, that thwarted (or at least substantially obstructed) the efforts of the defendant or his counsel to obey the state's procedural rule." *Burks*, 55 F.3d at 716-17. No such factor "external" to the defense existed here. The only other potential cause available to the petitioner is alleged attorney error or oversight. It is well settled, however, that attorney error or oversight is not sufficient cause for excusing a procedural default unless it rises to the level of constitutional ineffective assistance. *Burks*, 55 F.3d 712.

No such claim of constitutional ineffective assistance of counsel has been presented here or to the state court. Nor can the petitioner demonstrate actual prejudice sufficient to excuse his default. *See Coleman*, 501 U.S. at 750. The Appeals Court found that a list of persons with potentially matching prints would not have put into question the fingerprint and other evidence received in the case. (Exh.4).

Absent cause and actual prejudice sufficient to excuse his procedural default, the only other avenue available to the petitioner – that a refusal to hear his defaulted state law claim would result in a "fundamental miscarriage of justice" – is foreclosed. *Simpson*, 175 F.3d at 210. This exception to the procedural default rule is "'seldom to be used, and explicitly tied to a showing of actual innocence.'" *Killela v. Hall*, 84 F. Supp.2d 204, 210 (D. Mass. 2000), *quoting Burks*, 55 F.3d at 717. As the MAC's presumptively correct factual determinations establish, no such showing has been or could be made here.

In sum, the Massachusetts Appeals Court's adjudication of Ground One rests on an adequate and independent state law ground, i.e., waiver. As such this procedurally defaulted ground is not cognizable on habeas corpus review.

## II. THE PETITIONER HAS FAILED TO EXHAUST STATE REMEDIES ON GROUNDS TWO THROUGH FOUR AS REQUIRED BY 28 U.S.C. § 2254(b)(1)(A).

A. Standard of Review:

It is well-established that "a federal court should not consider questions posed in a habeas petition until the 'power of the highest state court in respect to such questions' has been exhausted." *Mele v. Fitchburg District Court*, 850 F.2d 817, 819 (1st Cir. 1988), *quoting United States ex rel. Kennedy v. Tyler*, 269 U.S. 13, 17 (1925). *See Rose v. Lundy*, 455 U.S. 509, 518-19

10

11

(1982); *Adelson v. DiPaola*, 131 F.3d 259, 261-262 (1st Cir. 1997); *Dougan v. Ponte*, 727 F.2d 199, 202 (1st Cir. 1984); 28 U.S.C. § 2254(b)(1)(A). The exhaustion principle, in addition to ensuring that state courts have the first opportunity to correct their own constitutional errors made in their proceedings, enables federal courts to accord appropriate respect to the sovereignty of the states and promotes comity by "minimiz[ing] friction between our federal and state systems of justice." *Rose*, 455 U.S. at 518. *See Duncan v. Henry*, 513 U.S. 364, 365-366 (1995); *Duckworth v. Serrano*, 454 U.S. 1, 3 (1984); *Scarpa v. DuBois*, 38 F.3d 1, 6 (1st Cir. 1994), *cert. denied*, 513 U.S. 1129 (1995); *Mele*, 850 F.2d at 819.

"The exhaustion requirement requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references [that] hint that a [federal] theory may be lurking in the woodwork will not turn the exhaustion trick." *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988). It is the petitioner's heavy burden to demonstrate that his now claimed federal errors were fairly presented to the state's highest court. *Nadworny v. Fair*, 872 F.2d 1093, 1098 (1st Cir. 1989). In order for it to be said that the petitioner has exhausted his state remedies as to his federal habeas claims, he must have presented the state court with appropriate federal trappings such as:

> specific constitutional language, constitutional citation, appropriate federal precedent, substantive constitutional analogy, argument with no masking state-law character, ... such as would in all likelihood alert a reasonable jurist as to the existence of the federal question.

*Id.* at 1101. "The fewer the trappings that adorn a petitioner's state-court filings, the less likely that [a federal court] will find his federal claim to have been exhausted." *Adelson*, 131

12

F.3d at 262. An "issue cannot be considered as having been fairly presented to the SJC for exhaustion purposes unless the applicant has raised it within the four corners" of the application for leave to obtain further appellate review ("ALOFAR"). *Mele v. Fitchburg District Court*, 850 F.2d at 823.

B.    Application:

Grounds Two through Four are unexhausted since the state's highest court has never been presented with these claims. In other words, they have not been included in the four corners of any ALOFAR. *Id.*

In Ground Two, the petitioner asserts that his conviction was obtained by the use of falsified and tampered fingerprint evidence. He claims that "Officer Thomas Heavey of the Brookline Police Department is the officer with initial control of the evidence. He is also the officer and defendant in the case filed by another officer accusing him of presenting false evidence, falsifying evidence, misleading prosecutors and ordering others to do the same in criminal cases. " (Petition, p. 5, ¶ 12B).

In Ground Three, the petitioner claims that his conviction was obtained by the prosecution knowingly withholding evidence favorable to him. In support he asserts: "Officer John B. Dirrane explained that if he went forward on this case that he might hurt the prosecution's case because of ethical reasons with the department. The assistant district attorney states 'we'll keep that information out of the trial.'"(Petition, p. 6, ¶ 12C)

In Ground Four, the petitioner alleges his conviction was obtained by a violation of his due process rights, prosecutorial misconduct. In support he states: "the prosecutor's reliance on the 'policy' of the State police to not release potential candidates to prosecutors or defense

13

attorneys runs afoul to my right to 'due process'. It's evidence that challenged the material. Prosecutor also destroyed evidence as well." (Petition, p.6, ¶ 12D).

None of these claims have been clearly presented to any court in Massachusetts, much less reviewed by an appellate court in the state. The petitioner did litigate an amended motion for a new trial in 2004 but the issues in that post-conviction matter were far different from the claims asserted in Grounds Two through Four.

Following his unsuccessful direct appeal, the petitioner filed a motion for a new trial in 2000 and amended it in 2004. (Exh. 9). On June 9, 2004, the court, Dortch-Okara, J., ordered the Commonwealth to respond to the amended motion. (Exh. 9). As the Commonwealth pointed out in its opposition, the amended new trial motion raised a belated "Daubert" challenge to the admissibility of fingerprints in general and to the qualifications of Detective Dirrane in particular. (See Exh. 9; Exh. 10 at 4-9). *See Daubert v. Merrill Dow Pharms.*, Inc., 509 U.S. 579 (1993)(trial judge must ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand; pertinent evidence based on scientifically valid principles will satisfy those demands). These claims are far different from the claims cited in Grounds Two through Four.

Moreover, the Commonwealth noted that the petitioner had not sought a Daubert" hearing at trial nor was the reliability of fingerprints or Detective Dirrane's qualifications an issue at trial. (Exh. 10. at 4-5). In any event, the amended motion for a new trial was denied on July 1, 2004 by Judge Dortch-Okara and no appeal followed. (Exh. 11; Exh. 1 at 3). [4]. So

---

[4] As the docket entries reveal, the petitioner missed the deadline for appealing the decision. (Exh. 1 at 3). The petitioner's motion to file a late appeal was denied by Judge Dortch-Okara on October 4, 2004, (Exh. 1at 3). It appears that the petitioner has failed to seek an enlargement of time from the Massachusetts Appeals Court for filing a notice of

14

even if the petitioner did appeal this latest decision, it would not salvage Grounds Two through Four for habeas corpus purposes since they are different from the claims raised in his petition. In sum, Grounds Two through Four are patently unexhausted and the respondent's motion to dismiss should be allowed.

## CONCLUSION

For the above-stated reasons, the petition should be dismissed.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

*/s/ Annette C. Benedetto*
Annette C. Benedetto
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200
BBO No. 037060

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the motion for leave to late file motion, motion to dismiss and supporting memorandum of law was served upon the following petitioner pro se by first class mail, postage pre-paid, on January 28, 2005.

David C. Jones, pro se
M.C.I. Shirley Medium
P.O. Box 1218
Shirley, MA 01464

*/s/ Annette C. Benedetto*
Annette C. Benedetto
Assistant Attorney General

---

appeal. See Mass. R. App. P. 14 (b)(appellate court or single justice for good cause shown may upon motion enlarge the time for filing a notice of appeal but not beyond one year from the date of entry of the judgment)