UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAVID JONES, | ) | |
| | ) | |
| Petitioner, | ) | CIVIL ACTION |
| v. | ) | NO. 04-12180-GAO |
| | ) | |
| MICHAEL A. THOMPSON, | ) | |
| Superintendent | ) | |
| | ) | |
| Respondent. | ) | |

**REPORT AND RECOMMENDATION
ON RESPONDENT'S MOTION TO DISMISS**

June 29, 2005

DEIN, U.S.M.J.

## I.  INTRODUCTION

The petitioner, David Jones ("Jones" or the "defendant"), is serving a ten (10) year sentence for breaking and entering in the daytime and larceny.  He filed a timely habeas petition pursuant to 28 U.S.C. § 2254, purporting to raise four grounds for relief.  This matter is presently before the court on the respondent's Motion to Dismiss (Docket No. 13).  Because this court finds that Ground One was procedurally defaulted and that the defendant has failed to exhaust his administrative remedies with respect to the remaining Grounds for relief, this court recommends to the District Judge to whom this case is assigned that the Motion to Dismiss be ALLOWED.

## II. STATEMENT OF FACTS[1]

Jones was indicted on September 4, 1996 by a Norfolk County grand jury for breaking and entering in the daytime and larceny. Ex. 2 at 2. The defendant was convicted on both counts by a jury on September 22, 1997, and was sentenced to 10 years at MCI Cedar Junction as a habitual offender. Id. at 3. His motion for a new trial was denied by the trial judge, and his conviction was affirmed by the Massachusetts Appeals Court on May 31, 2000. Commonwealth v. Jones, 49 Mass. App. Ct. 1110, 728 N.E.2d 972 (2000) (Table); Ex. 4. His application for leave to obtain further appellate review ("ALOFAR") was denied by the Massachusetts Supreme Judicial Court ("SJC") on July 21, 2000 without opinion. Commonwealth v. Jones, 432 Mass. 1105, 733 N.E.2d 1066 (2000) (Table); Ex. 5.

### The Underlying Offense

The facts relating to the underlying offense are straightforward.[2] On June 26, 1996, a home in Brookline was ransacked and various belongings removed while its occupants were away during the day. Ex. 4 at 1. There were three boxes in the master bedroom that had been emptied. Id. at 1-2. The police were able to obtain five latent fingerprints from one of the boxes. Id. at 2. The prints were submitted to "AFIS"

---

[1] Docket No. 15 (3 volumes) contains the record below divided into exhibits. Thus, references will be to "Ex. ___" as included in Docket No. 15.

[2] The state court's findings of fact are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). This presumption applies to factual determinations made both by the trial and appellate courts. Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002).

(Automatic Fingerprint Identification System of the State Police), which produced a positive identification with the defendant's prints. Id. A comparison done by a Brookline Detective and a State Police Lieutenant also resulted in a positive identification with the defendant's known prints. Id. These officers testified at trial. Ex. 3 at 7-8. While given the opportunity to do so, the defendant's expert did not conduct his own comparison of the prints. Ex. 3 at 21-23. There was evidence that there was no other opportunity for the defendant's prints to have been put on the box. Ex. 3 at 10-16. However, there was no other direct evidence placing the defendant at the crime scene. Id.

The defense proffered the testimony of the owner of a Worcester salon who testified that Jones had worked there as a barber for up to four hours on the day of the break-in, although the witness was not sure of the precise hours. Ex. 4 at 3. It would take approximately one hour to get from the salon to the site of the break-in. Id.

### The Dispute Over Fingerprint Evidence

When the fingerprints taken from the crime scene were submitted to AFIS, the computer generated a list of candidates whose fingerprints might match the perpetrator's prints — the computer itself is incapable of making an exact match. Ex. 2 (Jones' Brief to Appeals Court) at 9. During discovery prior to trial, however, the prosecutor represented to defense counsel and the court that no AFIS documents had been generated. Id. at 23. Four days prior to trial, however, the prosecutor did provide defense counsel with two other documents that had been generated by AFIS. See id. However, the computer generated list of potential matches was not among them. Id. The prosecutor represented

-3-

that Jones had been ranked first by the computer, although it was unclear whether an actual document had been generated.  <u>Id.</u> at 24; Ex. 3 at 20-21.

The defendant filed a motion in limine to exclude all fingerprint evidence, which was denied.  Ex. 2 at 24.  That motion, however, was based solely on the late disclosure of the AFIS documents.  Ex. 3 (Commonwealth's Brief to Appeals Court) at 18.  The challenge to the Commonwealth's failure to produce the computer generated list was not raised at trial or in the defendant's motion for a new trial.  <u>Id.</u> at 19.  Rather, it was raised for the first time in the direct appeal to the Appeals Court.  <u>Id.</u> at 18-19.

## **The Direct Appeal**

Jones raised two issues on his direct appeal.  <u>See</u> Ex. 2.  Specifically, he argued that the trial judge should have entered a required finding of not guilty because while "the jury could have found that although the defendant's fingerprints were found on a box belonging to [the homeowner], there was insufficient evidence presented to support the inference that they were placed there during the commission of the crime[.]"  <u>Id.</u> at 16.  In addition, the defendant argued (for the first time) that he was entitled to a new trial due to the government's failure to provide exculpatory evidence, namely the computer generated list of potentially matching prints, in violation of the defendant's constitutional rights.  <u>Id.</u> at 22-32.

The Appeals Court issued its Memorandum and Order pursuant to Rule 1:28 on May 31, 2000.  Ex. 4.  The court concluded that the defendant's motion for a required finding of not guilty was properly denied as there was sufficient evidence for the jury to

-4-

find that his fingerprints were placed on the box during the housebreak. Id. at 3. Jones is no longer pursuing this issue.

The court also found that the argument that "the judge erred in admitting the fingerprint evidence because the Commonwealth failed to provide the defendant with a list of those persons with 'potentially matching prints' that had supposedly been generated by AFIS" had not been raised below and seemed to be "a new and different argument" than his prior objection to the late disclosure of fingerprint evidence. Id. at 3-4. The court concluded, nevertheless, that it was an irrelevant argument. As the Appeals Court held:

> At all events, although there may not have been a specific AFIS-generated document listing candidates, apparently AFIS did call up possible candidates and the defendant could be interested to learn the array. In the long run, however, the information could hardly have proved significant so as to put in question the fingerprint and other evidence received in the case.

Id. at 4.

Jones then filed an ALOFAR with the SJC, raising the same issues as previously presented to the Appeals Court. Ex. 5 at 11. The application was denied without opinion on July 21, 2000.

### Subsequent Appeals

On October 20, 2000, Jones filed a pro se renewed motion for a new trial. Ex. 7A at R8. On October 27, 2000, the trial judge endorsed the motion "finding that there exist colorable issues for further inquiry" due to another case in which the Brookline Police

Department had been charged with destroying fingerprint evidence.  Ex. 7A at 3 and n.2.  The trial judge, therefore, <u>sua sponte</u>, referred the matter to CPCS for appointment of counsel.  <u>Id.</u> at 3.  On December 10, 2002, the defendant, through counsel, filed a motion for the government to produce the list of potential matches as determined by the AFIS computer system.  <u>Id.</u>  The trial judge allowed the motion on January 27, 2003, and confirmed her order on March 3, 2003.  Ex. 7A at R8.

      The Commonwealth appealed to a Single Justice of the SJC pursuant to Mass. Gen. Laws ch. 211, § 3, who, on June 12, 2003, allowed the Commonwealth's petition for extraordinary relief and vacated the trial judge's order allowing discovery.  Ex. 7.  Therein, the Single Justice noted that in connection with his direct appeal, the Appeals Court had concluded that the defendant had waived his objection to the failure to produce the list of potential matches, but had nonetheless reviewed the issue under a "substantial risk of a miscarriage of justice" standard.  <u>Id.</u> at 1-2.  The Single Justice concluded that the defendant, by his discovery motion, was again seeking to "reargue the issue of prejudice caused by the missing AFIS report" and that "[a]bsent extraordinary circumstances or a change in the law, the Appeals Court's decision on that matter may not be relitigated."  <u>Id.</u> at 2.  The Single Justice therefore vacated the order allowing post-conviction discovery.  <u>Id.</u> at 3.  The defendant then appealed to the full court.  On April 28, 2004, the SJC issued an opinion affirming the judgment of the Single Justice.  <u>Commonwealth v. Jones</u>, 441 Mass. 1015, 807 N.E.2d 169 (2004) (rescript); Ex. 6.  As the SJC held, "Jones had failed to satisfy his burden of establishing a prima facie case for

relief" since he had "failed to support his motion with any affidavits or other materials challenging, for example, the methodology used by the Commonwealth's fingerprint experts or the reliability of the experts' conclusions that the prints recovered from the crime scene matched Jones's prints and that all other possible matches from the AFIS search were therefore ruled out." 441 Mass. at 1016, 807 N.E.2d at 170.

While the defendant's appeal to the full bench was pending, he filed several motions with the Superior Court, including a renewed motion for a new trial based on newly discovered evidence. See Ex. 9. Specifically, the defendant challenged the scientific validity of fingerprint evidence and argued that a Daubert hearing was necessary. Id. The motion was denied by the trial court on July 1, 2004. Ex. 11. The defendant's motion to file a late notice of appeal was denied on October 4, 2004. Ex. 1. The defendant filed his petition for writ of habeas corpus on October 18, 2004.

The habeas petition asserts four grounds for relief. Specifically, Jones asserts that:

(1)   his conviction was obtained by the unconstitutional failure of the prosecutor to disclose evidence favorable to the petitioner, namely the AFIS computer generated list of potential matches. (Petition at 5, ¶ 12A).

(2)   his conviction was obtained by the use of falsified and tampered fingerprint evidence. Specifically, Jones claims that "Officer Thomas Heavey of the Brookline Police Department is the officer with initial control of the evidence. He is also the officer and defendant in the case filed by another officer accusing him of presenting false evidence, falsifying evidence, misleading prose-cutors and ordering others to do the same in criminal cases." (Petition at 5, ¶ 12B).

    (3)    his conviction was obtained by the prosecution knowingly withholding evidence favorable to him.  Specifically, Jones alleges that "Officer John B. Dirrane explained that if he went forward on this case that he might hurt the prosecution's case because of ethical reasons with the department.  The assistant district attorney states 'we'll keep that information out of the trial.'" (Petition at 6, ¶ 12C)

    (4)    his conviction was obtained by a violation of his due process rights, prosecutorial misconduct.  Specifically, Jones asserts that "[t]he prosecutor's reliance on the 'policy' of the State Police to not release potential candidates to prosecutors or defense attorneys runs afoul to my right to 'due process'.  It's evidence that challenged the material.  Prosecutor also destroyed evidence as well."  (Petition at 6 ¶ 12D).

The Commonwealth filed its motion to dismiss on March 1, 2005, and the defendant filed his opposition on May 26, 2005.  For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Motion to Dismiss be ALLOWED.

### III.  DISCUSSION

#### A.  Ground One: Procedural Default

The standard of review to be applied to Jones' habeas corpus petition is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under this standard, a federal habeas court may not grant a writ of habeas corpus unless the underlying state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  However, a federal court may not reach the merits of a habeas petition where, as here, the state court proceeded on an independent state ground.  In the instant case, the state courts

concluded that Jones had waived his claim that the Commonwealth had wrongfully failed to produce the AFIS computer-generated list of potential matches by not objecting at trial. Thus, on appeal the underlying conviction was reviewed under a "substantial miscarriage of justice" standard.  Because the state court proceeded on an independent state ground – waiver – this court cannot review the merits of Jones' claim.

"A finding by a state court that a defendant procedurally defaulted a claim bars federal habeas corpus relief on that claim unless the defendant as a petitioner shows either cause for the default and prejudice from the claimed violation of federal law, or that a fundamental miscarriage of justice will result if the claim is not considered." Gunter v. Maloney, 291 F.3d 74, 78 (1st Cir. 2002) (citing Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)).  The doctrine of procedural default arises out of "the long-standing rule that federal courts do not review state court decisions which rest on 'independent and adequate state ground[s].'  Such independent and adequate state grounds exist where 'the state court declined to hear [the federal claims] because the prisoner failed to meet a state procedural requirement.'  In such a case, '[c]onsiderations of comity and federalism bar the federal court's review.'" Simpson v. Matesanz, 175 F.3d 200, 205-06 (1st Cir. 1999) (internal citations and punctuation omitted), cert. denied, 528 U.S. 1082, 120 S. Ct. 803, 145 L. Ed. 2d 677 (2000).  "A procedurally defaulted claim may, however, be resurrected if the last state court granting review addresses a federal claim on its merits, thereby waiving the default." Manisy v. Maloney, 283 F. Supp. 2d 307, 311 (D. Mass. 2003).

In Massachusetts, the rule that "a claim not raised is waived" is regularly enforced and "firmly established." Gunter, 291 F.3d at 79 and cases cited. It is equally well-established that the state appellate court's decision to review a case under a "miscarriage of justice" standard following a failure to object does not waive the need for a contemporaneous objection, and does not "create independent rights in habeas petitioners." Id. at 79-80, and cases cited. Accord Burks v. Dubois, 55 F.3d 712, 716 n.2 (1st Cir. 1995).

In the instant case, it is clear that the state courts did not waive the procedural default, but, rather engaged only in a "discretionary, and necessarily cursory, review under a 'miscarriage of justice' analysis[.]" Manisy, 283 F. Supp. 2d at 312, and cases cited. As the Single Justice summarized the case history:

> [In his direct appeal], the defendant argued that he had been prejudiced by the Commonwealth's failure to preserve a candidate list generated by the State Police Automated Fingerprint Identification System (AFIS). The Appeals Court concluded that the defendant had waived that argument and held that the Commonwealth's failure to provide the list to the defense did not create a substantial risk of a miscarriage of justice.

Ex. 7 at 1-2. Where, as here, the state court declined to hear the merits of the claim because Jones failed to object at trial, the state court decision is "said to rest on independent and adequate state procedural grounds," and this federal court cannot "review claims the state courts never had a proper chance to consider." Brewer v. Marshall, 119 F.3d 993, 999 (1st Cir. 1997).

### 1.  **Exceptions to the Procedural Default Rule**

In the event of a procedural default, federal habeas review nevertheless is available if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750, 111 S. Ct. at 2565. Jones does not meet these requirements.

#### Cause

"In order to establish cause for the default, petitioner must demonstrate 'that some objective factor external to the defense impeded [defense] counsel's efforts to comply with the State's procedural rule.'" Magee v. Harshbarger, 16 F.3d 469, 471-72 (1st Cir. 1994) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Here, there was no external factor which precluded trial counsel from complying with the requirement that timely objection be made. Moreover, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Murray, 477 U.S. at 486-87, 106 S. Ct. at 2644. "So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington," 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant "bear[s] the risk of attorney error that results in a procedural default." Murray,

477 U.S. at 488, 106 S. Ct. at 2645.³  Therefore, the instant record does not support a finding of cause which could excuse the procedural default.

## Prejudice

Jones also has failed to establish prejudice in this case from the failure to produce the list of potential matches.  "[A]n error generally is considered prejudicial if there is a strong possibility that it affected the outcome of the trial."  Ouber v. Guarino, 293 F.3d 19, 33 (1st Cir. 2002).  Here, however, as the Appeals Court found, the absence of the list did not affect the defendant's ability to thoroughly examine the fingerprints which were found.  In fact, the defendant did not dispute that his prints were on the box, but rather contended that there was insufficient evidence to establish that the prints were put there during the break-in.  Ex. 3 at 10-15.  Thus, even assuming there was an error committed, it was not prejudicial and does not excuse the procedural default.

## Miscarriage of Justice

Finally, "[e]ven absent a showing of cause and prejudice, a federal court exercising its habeas powers should nonetheless overlook a procedural default and hear a barred constitutional claim on the merits if its failure to do so would result in a

---

³ Ineffective assistance of counsel may constitute "cause" for failing to object at trial.  See Gunter, 291 F.3d at 81.  However, when "the habeas petitioner wants to use ineffective assistance of counsel to establish cause to excuse a state procedural default, that ineffective assistance claim must itself ordinarily be fairly presented to the state courts and exhausted."  Id.  Here, Jones has not claimed ineffective assistance of counsel before any court.

fundamental miscarriage of justice." Burks v. Dubois, 55 F.3d at 717.  As the Burks court explained:

> This is a narrow exception to the cause-and-prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence ....  To be sure, a habeas petitioner need not prove his innocence beyond all doubt in order to reach the safe haven of the miscarriage exception: it suffices if the petitioner can show a probability that a reasonable jury would not have convicted but for the constitutional violation.

Id. at 717-18 (internal citations omitted).

In the instant case, Jones does not claim that he is "actually innocent."  In view of the evidence linking the defendant to the crime, he has failed to establish that his conviction resulted in a miscarriage of justice.

Since Ground One has been procedurally defaulted, the motion to dismiss this Ground should be allowed.

### B.  Grounds Two - Four: Failure to Exhaust State Court Remedies

As detailed above, the points raised as Grounds Two through Four of Jones' habeas petition have never before been presented to the state courts.  Consequently, the motion to dismiss as to these Grounds should be allowed as well.

It is firmly established that, barring exceptional circumstances, "a habeas petitioner in state custody may not advance his or her constitutional claims in a federal forum unless and until the substance of those claims has been fairly presented to the state's highest court."  Barresi v. Maloney, 296 F.3d 48, 51 (1st Cir. 2002).  Accordingly, the legal theories presented as grounds for relief must be the same in both the state and

federal courts. Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987), and cases cited. The principal purpose of this doctrine is to "protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U.S. 509, 518, 102 S. Ct. 1198, 1203, 71 L. Ed. 2d 379 (1982). In other words, the exhaustion doctrine serves to give state courts the "first opportunity to review all claims of constitutional error." Id. at 518-19, 102 S. Ct. at 1203.

The Petitioner has the burden of satisfying the exhaustion requirement. Barresi v. Maloney, 296 F.3d at 51. In the present case, Jones has failed to raise these grounds in any appeal in the state court. "The defect is a fatal one, for federal habeas oversight is not a freewheeling construct. It is dependent, among other things, upon all of the claims asserted in the petition having been exhausted in the state courts." Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988).

## IV. CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the respondent's Motion to Dismiss (Docket No. 13) be ALLOWED.[4]

       / s / Judith Gail Dein
       Judith Gail Dein
       United States Magistrate Judge

---

[4] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).